IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOILERMAKER-BLACKSMITH
NATIONAL PENSION FUND, et al.,

        Plaintiffs,

v.

        Civil Action No. 09-2289-DJW

ALLIANCE CONSTRUCTORS, INC.,

        Defendant.

## MEMORANDUM AND ORDER

Pending before the Court is Plaintiffs' Brief for Attorney's Fees, Interest, Liquidated Damages, and Costs (ECF No. 29), wherein Plaintiffs apply for an award of pre-judgment interest, liquidated damages, attorney's fees, and costs. In response, Defendant has filed its Supplemental Brief in Connection with Pre-judgment and Post-judgment Relief (ECF No. 32). Upon review of the Briefs, the Court concludes that Plaintiffs are entitled to an award of pre-judgment interest in the amount of $46,832.86, additional interest in the amount of $46,832.86, reasonable attorney's fees in the amount of $16,966.94, litigation costs in the amount of $671.76, and audit costs in the amount of $5,844.28.

**I.    Factual Background**

Several employee benefit plans and their fiduciaries brought this action pursuant to Sections 502 and 515 of the Employee Retirement Income Security Act of 1974 ("ERISA") to collect fringe benefit contributions from Defendant.[1] On August 18, 2010, the Court entered its Memorandum and Order granting summary judgment in favor of Plaintiffs, holding that

---

[1] Pretrial Order at 2, ECF No. 21.

Plaintiffs were entitled to judgment against Defendant in the amount of $398,189.68.[2] The Court further ordered Plaintiffs to file a "supplemental brief regarding the interest rate they contend the Court should use in awarding interest under ERISA Section 502(g)(2)(B) and the amount of liquidated damages they claim they are entitled to receive under ERISA Section 502(g)(2)(C)."[3] Defendant was granted ten days after the filing of Plaintiffs' supplemental brief to file its response.[4] Plaintiffs were also ordered to file a motion to recover attorney's fees under ERISA Section 502(g)(2)(D) pursuant to the requirements set forth in D. Kan. Rule 54.2 regarding the recovery of statutory attorney's fees.[5] Finally, the Court directed the parties to attempt to settle costs without further Court intervention.[6]

## II. Law as to Damages under Section 502(g)(2) of ERISA

The Court has entered judgment in favor of Plaintiffs for unpaid contributions pursuant to Sections 502 and 515 of ERISA.[7] The remedies for an employer's breach of Section 515 are set forth in Section 502(g)(2) of ERISA, codified as 29 U.S.C. § 1132(g)(2), which provides that:

> In any action under this title by a fiduciary for or on behalf of a plan to enforce section 515 in which a judgment in favor of the plan is awarded, the court shall award the plan—
> (A) the unpaid contributions,
> (B) interest on the unpaid contributions,
> (C) an amount equal to the greater of—
>     (i) interest on the unpaid contributions, or

---

[2] *Boilermaker-Blacksmith Nat'l Pension Fund v. Alliance Constructors, Inc.*, No. 09-2289-DJW, 2010 U.S. Dist. LEXIS 85586, at *20 (D. Kan. Aug. 18, 2010), ECF No. 26.

[3] *Id.* at *21.

[4] *Id.*

[5] *Id.*

[6] *Id.* at *19.

[7] Am. J., ECF No. 28.

        (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount determined by the court under subparagraph (A),
(D) reasonable attorney's fees and costs of the action, to be paid by the defendant, and
(E) such other legal or equitable relief as the court deems appropriate.[8]

Further, "an award of these items is mandatory when there is a judgment in favor of a plan."[9]

## III. Determination of Damages

### A. Pre-Judgment Interest

ERISA Section 502(g)(2)(B) requires the court to award pre-judgment interest on the unpaid contributions. The interest "shall be determined by using the rate provided under the plan, or, if none, the rate prescribed under Internal Revenue Code § 6621."[10] In its order granting summary judgment, the Court found that Plaintiffs had failed to provide evidentiary support for their assertion that the plan provided for interest at an annual rate of 12%.[11] As a result, the Court was unable to determine whether the applicable interest rate should be the rate alleged by Plaintiffs as provided under the plan, or the rate prescribed under I.R.C. § 6621. Therefore, Plaintiffs were ordered to file "a supplemental brief regarding the interest rate they contend the Court should use in awarding pre-judgment interest on the amount of the unpaid contributions, the total amount of interest they are seeking from the date contributions first

---

[8] 29 U.S.C. § 1132(g)(2)(A)-(E); *see also Bd. of Trs., Sheet Metal Workers' Local 9 Pension Trust v. Maria Custom Sheet Metal, Inc.,* No. 07-cv-00840-CMA-MJW, 2009 U.S. Dist. LEXIS 57617, at *5-6 (D. Colo. June 19, 2009); *Jefferson Tile Co., Inc. v. Colo. Tile, Marble & Terrazzo Workers Health, Welfare & Pension Funds, Nos. 6 & 85,* 797 F. Supp. 857, 859 (D. Colo. 1992).

[9] *Jefferson Tile Co.* 797 F. Supp. at 859 (citing *Trs. Colo. Statewide Ironworkers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc.*, 824 F. 2d 817, 818 (10th Cir. 1987).

[10] 29 U.S.C. § 1132(g)(2).

[11] *Boilermaker,* 2010 U.S. Dist. LEXIS 85586, at *13.

became due to the date of judgment, and how they arrived at that amount."[12]

In response, Plaintiffs filed their brief, requesting pre-judgment interest in the amount of $63,917.84.[13] As support, Plaintiffs attached the affidavit of their claims examiner, who calculated the amount, along with a copy of the spreadsheet prepared by the examiner.[14] Per the examiner, the spreadsheet "is programmed to calculate interest (at) twelve percent (12%) per annum on the subtotal of principal plus liquidated damages."[15] Plaintiffs did not provide a copy of any written provision for interest contained in the plan to the Court. Upon review, the Court finds that Plaintiff has failed to provide any evidence that the plan provides for a 12% rate of interest.

Defendant argues against using an interest rate of 10-12%, proposing instead that the Court consider the type of return that Plaintiffs would have received had they invested the unpaid amounts.[16] Defendant contends that an interest rate of 5% would provide an "extraordinary return" on the unpaid amounts, as well as serve as a deterrent to other employer contributors.[17] Defendant's arguments are misplaced, however, as Section 502(g)(2)(B) does not allow the Court any discretion as to the rate of interest, which must be either the rate provided under the plan, or, if none is provided, the rate prescribed under I.R.C. § 6621.[18]

---

[12] *Id.* at *13–14.

[13] Pls.' Br. at 3, ECF No. 29.

[14] *Id*. at 26-31.

[15] *Id*. at 27.

[16] Def.'s Suppl. Br. at 2, ECF No. 32.

[17] *Id.*

[18] 29 U.S.C. § 1132(g).

As the Court has found no evidence of a 12% interest rate under the plan, the Court must use the rate prescribed under I.R.C. § 6621. Annual rates under I.R.C. § 6621 after December 31, 1982 are to be determined by the Commissioner of Internal Revenue and published in Revenue Rulings.[19] The most recent such Revenue Ruling includes tables setting forth annual rates for prior periods.[20] I.R.C. § 6621(c) also provides for a rate increase of 2 percentage points in the instance of a large corporate underpayment, which is defined as an underpayment by a corporation exceeding $100,000.[21] Thus, for periods where Defendant's unpaid contribution balance was below $100,000, the applicable interest rate can be found in the table accompanying Rev. Rul. 2013-6 titled "Table of Interest Rates from January 1, 1999 – Present, Corporate Overpayments and Underpayments."[22] Further, for periods where Defendant's unpaid contribution balance exceeded $100,000, the applicable interest rate can be found in the table titled "Table of Interest Rates for Large Corporate Underpayments from January 1, 1999 – Present."[23] By reviewing the unpaid contribution amounts (identified as "Principal") and time periods (identified as "From" and "To") as shown on Plaintiffs' claims examiner's spreadsheet, the Court has determined that prior to January 24, 2007, the unpaid contribution balance was less than $100,000, and that from January 24, 2007 on, the unpaid contribution balance exceeded $100,000.[24]

---

[19] Treas. Reg. § 301.6621-1(a)(3).

[20] Rev. Rul. 2013-6, 2013-13 I.R.B. 701.

[21] I.R.C. § 6621(c)(3)(A).

[22] Rev. Rul. 2013-6.

[23] *Id*.

[24] Pls.' Br. at 28-31.

Based on the foregoing, the Court finds that the interest rates to use in awarding pre-judgment interest are as follows:

| Time period | Interest rate |
|---|---|
| 10/25/2006 to 1/24/2007 | Corporate underpayment rate of 8% per annum |
| 1/25/2007 to 12/31/2007 | Large corporate underpayment rate of 10% per annum |
| 1/1/2008 to 3/31/2008 | Large corporate underpayment rate of 9% per annum |
| 4/1/2008 to 6/30/2008 | Large corporate underpayment rate of 8% per annum |
| 7/1/2008 to 8/24/2008 | Large corporate underpayment rate of 7% per annum |

In addition, the Court has reviewed the spreadsheet prepared by Plaintiff's examiner to determine how Plaintiff calculated the total amount of pre-judgment interest. It appears that Plaintiff included both unpaid contributions (identified as "Principal") and an amount identified as "Liquidated Damages" in the total amount (identified as "Balance Due Int") when it calculated the amount of interest.[25] Section 502(g)(2)(B) provides for "interest on the unpaid contributions" only, and as such, the Court will not include the additional amount identified as "Liquidated Damages" in the principal used to calculate the interest amount.[26] Further, Plaintiff calculated pre-judgment interest for the time period from October 25, 2006 through August 24, 2008 only.[27] Therefore, the Court shall use the dates and time periods provided by Plaintiff.

Attached to this Order is the Court's "Addendum 1 – Interest Calculation Table," setting forth the unpaid contribution amounts, time periods, and interest rates used to calculate the total amount of pre-judgment interest to be awarded. The unpaid contribution amounts and time periods were provided by Plaintiffs in the spreadsheet attached as Exhibit A to the Affidavit of

---

[25] *Id.*

[26] 29 U.S.C. § 1132(g)(2)(B).

[27] Pls.' Br. at 28-31.

Plaintiff's claims examiner.[28] By applying simple interest on a daily basis to the unpaid contribution principal balance, the Court has determined that Plaintiffs are entitled to an award of pre-judgment interest on the unpaid contributions in the amount of $46,832.86.

### B. Additional Interest/Liquidated Damages

Section 502(g)(2)(C) mandates an award of the greater of either additional interest on the unpaid contributions or liquidated damages. More specifically, the statute requires that the court award

> an amount equal to the greater of—
> (i) interest on the unpaid contributions, or
> (ii) liquidated damages provided for under the plan in an amount not in excess of 20 percent (or such higher percentage as may be permitted under Federal or State law) of the amount [of the unpaid contributions] determined by the court under subparagraph (A).[29]

In its order granting summary judgment, the Court found that Plaintiffs had failed to provide evidentiary support for their assertion that they are entitled to liquidated damages in the amount of $24,067.72.[30] In the absence of any evidence regarding a liquidated damages provision in the plan, the Court directed the parties "to also address the issue of liquidated damages and to provide all appropriate evidentiary support and argument so that the Court may award the proper amount of relief under Section 502(g)(2)(C)."[31]

In their brief, Plaintiffs now request liquidated damages in the amount of $19,919.70.[32] In support, Plaintiffs attached the aforementioned claims examiner's affidavit, wherein affiant

---

[28] See Pls.' Br. at 28-31.

[29] 29 U.S.C. § 1132(g)(2)(C).

[30] *Boilermaker*, 2010 U.S. Dist. LEXIS 85586, at *15.

[31] *Id.* at *16.

[32] Pls.'Br. at 3.

7

states that the spreadsheet "is programmed to calculate liquidated damages at five percent (5%) of the total principal."[33] Again, however, Plaintiffs failed to provide a copy of any plan provision for liquidated damages. As a result, the Court finds that Plaintiff has failed to provide sufficient evidence that the plan provided for liquidated damages. Further, in the absence of any finding of a liquidated damages provision, the interest on the unpaid contributions is the greater amount by default under Section 502(g)(2)(C). Therefore, the Court finds that Plaintiffs are entitled an award of an amount which is equal to the pre-judgment interest on the unpaid contributions, or $46,832.86, and shall award said amount to Plaintiffs.

### C. Attorney's Fees

Section 502(g)(2)(D) of ERISA provides for an award of "reasonable attorney's fees."[34] Plaintiffs have applied for $16,966.94 in attorney's fees, and have provided a detailed itemization of the attorney and paralegal services performed in this matter.[35] Defendant does not contend that the amount of fees requested by Plaintiff is unreasonable, but instead opposes any award of attorney's fees.[36] In support of its position, Defendant argues that the Court should apply the discretionary guidelines for imposition of attorney's fees as set forth in the case of *Kansas v. Titus*.[37] The Court declines to follow Defendant's suggestion, as Defendant's analysis relies on case law pertaining to actions brought by individual beneficiaries seeking attorney's fees pursuant to Section 502(g)(1). In contrast, if an action is brought by a fiduciary for or on

---

[33] *Id.* at 27.

[34] 29 U.S.C. § 1132(g)(2)(D).

[35] *See* Pls.' Br. at 10–24.

[36] Def.'s Suppl. Br. at 4.

[37] 452 F. Supp. 2d 1136, 1153 (D. Kan. 2006).

behalf of a plan, as in the present case, then Section 502(g)(2) applies. Further, under Section 502(g)(2)(D), when judgment is entered in favor of the plan, an award of attorney's fees is mandatory, not discretionary.[38]

In the Order granting summary judgment, the Court ordered Plaintiffs to (1) file a motion to recover attorney's fees within ten days of the order granting summary judgment and (2) comply with the requirements in D. Kan. Rule 54.2.[39] Under Rule 54.2(a), a party who moves for statutory attorney's fees "must promptly initiate consultation with the other party or parties." If the parties can reach an agreement regarding attorney's fees, D. Kan. Rule 54.2(b) allows the parties to submit a stipulated agreement and request an order. If the parties cannot reach an agreement regarding attorney's fees, Rule 54.2(c) requires that the moving party file a (1) statement that the parties have been unable to reach an agreement even after consultation and (2) a memorandum laying out the facts that the court should consider in making an award of attorney's fees. The moving party must file this statement within thirty days of filing the motion for attorney's fees.[40] In compliance with D. Kan. Rule 54.2, Plaintiffs have filed their statement that "the Parties engaged in discussions" but "have determined they will not reach an agreement" on attorney's fees.[41]

To determine the reasonable amount of attorney's fees to award Plaintiff under Section 502(g)(2)(D), the Court must calculate a lodestar figure by multiplying the number of hours

---

[38] *Trs. Colo. Statewide Ironworkers (Erector) Joint Apprenticeship & Training Trust Fund v. A & P Steel, Inc.*, 824 F.2d 817, 818 (10th Cir. 1987).

[39] *Boilermaker*, 2010 U.S. Dist. LEXIS 85586, at *17.

[40] D. Kan. Rule 54.2(d) (advising that the court will not consider a motion for statutory attorney's fees until a statement of compliance has been filed with the court, setting forth the "date of consultation, the names of those who participated, and the specific results achieved").

[41] Report 2, ECF No. 42.

reasonably spent by counsel on the litigation by a reasonable hourly rate.[42] Plaintiffs bear the burden in this case of documenting the hours worked, as well as the hourly rate charged.[43]

First, as to the hours reasonably spent on this litigation by Plaintiffs' counsel, Plaintiffs bear the burden of showing that the hours claimed are reasonable.[44] Plaintiffs' counsel, Rebecca Proctor, states that Plaintiffs have been billed for 80.17 hours in attorney time and 19.45 hours in paralegal time.[45] The Court has reviewed the itemized bills submitted by Plaintiffs and finds that the claimed number of hours is reasonable.

Next, the Court must determine the reasonable hourly rate, which is the prevailing market rate in the community for attorneys with similar skill and experience.[46] Plaintiffs seek an hourly rate of $200.00 for Mr. Schwartz, a partner, for work performed before January 1, 2009, and $210.00 for work performed after that date.[47] Further, Plaintiffs seek an hourly rate of $180.00 for Ms. Proctor, an associate level attorney, for work performed prior to January 1, 2009, and $190.00 for work performed beyond that date.[48] And further, Plaintiffs seek an hourly rate of $90.00 for Ms. Zans, a paralegal, for work performed before January 1, 2009, and $95.00 for

---

[42] *Sheldon v. Vermonty*, 237 F. Supp. 2d 1270, 1274 (D. Kan. 2002); *see also Hayne v. Green Ford Sales, Inc.*, No. 09-2202-JWL, 2010 U.S. Dist. LEXIS 64702, at *7 (D. Kan. June 29, 2010).

[43] *See Boilermaker-Blacksmith Nat'l Pension Fund v. Ace Polyethylene Bag Co.*, No. 01-2028-KHV, 2002 WL 372868, at *1 (D. Kan. Mar. 7, 2002).

[44] *Id.*

[45] Pls.' Br. at 6:7.

[46] *Ellis v. Univ. of Kan. Med. Ctr.*, 163 F.3d 1186, 1204 (10th Cir. 1998) (citations omitted).

[47] Pls.' Br. 2:4.

[48] *Id.*

work performed after that date.[49] The Court finds that these requested hourly rates are reasonable.

Thus, the Court finds the claimed number of hours, as well as the hourly rate charged, to be reasonable. Further, Defendant does not contend that these figures are unreasonable. Therefore, the Court shall award reasonable attorney's fees in the amount of $16,966.94 to Plaintiffs.

**D.     Costs**

Section 502(g)(2)(D) of ERISA also provides for the recovery of the costs of the action.[50] Although ERISA does not specifically outline the types of costs recoverable, the Court's order granting summary judgment provided that Plaintiffs could recover the costs incurred in auditing Defendant's records.[51] The Court further directed the parties to settle the matter of costs without further assistance from the court. In the event that the parties did settle the issue of costs, the Court ordered the parties to file a stipulation as to costs. If the parties were unable to reach a settlement, Plaintiffs were to file a motion requesting costs with appropriate support. In either situation, the filing was to occur within thirty days from the order granting summary judgment. Although the parties did not file a stipulation as to costs, Defendant did not oppose the amount of costs applied for by Plaintiffs in their brief. Therefore, the Court shall award litigation costs in the amount of $671.76 and audit costs in the amount of $5,844.28 to Plaintiffs.

---

[49] *Id*. 3:6.

[50] 29 U.S.C. § 1132(g)(2)(D).

[51] *See Boilermaker*, 2010 U.S. Dist. LEXIS 85586 at *18.

11

**IT IS THEREFORE ORDERED** that, pursuant to Section 502(g)(2)(B) of ERISA, Plaintiffs are awarded prejudgment interest on the unpaid contributions in the amount of $46,832.86.

**IT IS FURTHER ORDERED** that, pursuant to Section 502(g)(2)(C) of ERISA, Plaintiffs are awarded the amount of $46,832.86, which is equal to the interest on the unpaid contributions.

**IT IS FURTHER ORDERED** that, pursuant to Section 502(g)(2)(D) of ERISA, Plaintiffs are awarded attorneys' fees in the amount of $16,966.94, litigation costs in the amount of $671.76, and audit costs in the amount of $5,844.28.

**IT IS SO ORDERED.**

Dated in Kansas City, Kansas, on this 13th day of May, 2013.

s/ David J. Waxse  
David J. Waxse  
U. S. Magistrate Judge

**Civil Action No. 09-2289-DJW**
**ADDENDUM 1 – INTEREST CALCULATION TABLE**

| Work Month | Unpaid Contributions | Principal Balance | From | To | Days | Rate | Interest |
|---|---|---|---|---|---|---|---|
| Sep 2006 | $22,707.52 | $22,707.52 | 10/25/2006 | 11/24/2006 | 31 | 8% | $154.29 |
| Oct 2006 | $32,358.48 | $55,066.00 | 11/25/2006 | 12/24/2006 | 30 | 8% | $362.08 |
| Nov 2006 | $30,832.16 | $85,898.16 | 12/25/2006 | 1/24/2007 | 31 | 8% | $583.64 |
| Dec 2006 | $23,211.44 | $109,109.60 | 1/25/2007 | 2/24/2007 | 31 | 10% | $926.68 |
| Jan 2007 | $22,381.44 | $131,491.04 | 2/25/2007 | 3/24/2007 | 28 | 10% | $1,008.70 |
| Feb 2007 | $22,978.54 | $154,469.58 | 3/25/2007 | 4/24/2007 | 31 | 10% | $1,311.93 |
| Mar 2007 | $28,240.64 | $182,710.22 | 4/25/2007 | 5/24/2007 | 30 | 10% | $1,501.73 |
| Apr 2007 | $30,535.07 | $213,245.29 | 5/25/2007 | 6/24/2007 | 31 | 10% | $1,811.12 |
| May 2007 | $53,334.80 | $266,580.09 | 6/25/2007 | 7/24/2007 | 30 | 10% | $2,191.07 |
| Jun 2007 | $36,136.53 | $302,716.62 | 7/25/2007 | 8/24/2007 | 31 | 10% | $2,571.02 |
| Jul 2007 | $26,548.26 | $329,264.88 | 8/25/2007 | 9/24/2007 | 31 | 10% | $2,796.50 |
| Aug 2007 | $49,203.18 | $378,468.06 | 9/25/2007 | 10/24/2007 | 30 | 10% | $3,110.70 |
| Sep 2007 | $19,837.56 | $398,305.62 | 10/25/2007 | 12/31/2007 | 68 | 10% | $7,420.49 |
| | -- | $398,305.62 | 1/1/2008 | 3/31/2008 | 91 | 9% | $8,937.32 |
| | -- | $398,305.62 | 4/1/2008 | 6/30/2008 | 91 | 8% | $7,944.28 |
| | -- | $398,305.62 | 7/1/2008 | 8/24/2008 | 55 | 7% | $4,201.31 |
| | | | | | | Total | $46,832.86 |